J. R. Swan, J.,
concurring.
I. The first question to determine is, whether the powers and-duties vested in the board of appointment, by the laws under consideration, are of a public official character; in other words, whether William Kennon and others, are authorized to perform official public acts of such a nature' as constituted them public officers ?
The power of selecting individuals to fill offices of public trust is one of the highest and most important public functions which can be conferred upon an individual. This power in monarchical governments, is a prerogative of the king, annexed to and forming-one of the highest attributes of sovereignty. It is the only official power conferred on the president of the United States, which is felt throughout all the ramifications of governmental and political action.
This power must, necessarily, be derived from the constitution or government. If conferred exclusively on an individual or board, the government can not be administered until the individual’ or board sets it in motion by filling the offices. And when this power is exercised either by an individual, such as a king, or by two or more individuals, formed into a board, their act in appointing officers is one of the official procedures of the government, public and official from its very nature, and from the fact that the power thus exercised is a political function derived from the government.
By the laws under consideration, aboard of appointment is constituted, upon which is devolved the trust to select, and the power to appoint, directors of the penitentiary and commissioners-*of the state-house. The board -is also clothed with the power of filling vacancies in the office of directors when such shall occur by death, removal, or otherwise; and to remove directors for certain causes, and appoint others in their place.
*513 In the exercise of these powers, the board of appointment is-made a public tribunal, not only to select, appoint, and fill vacancies in state offices, but to sit in judgment upon the official conduct of state officers, and remove them for certain causes, and appoint others in their place. These powers are not casual or temporary. In supervising the conduct of state officers, and filling vacancies,, they are continuous and permanent. The discretion and powers,, which the board is authorized to exercise, manifestly relate directly to, and form an integral part of, the due administration of the public affairs of the state.
The learned counsel in behalf of William Kennon and others,, had not the boldness to deny that the board constituted by these laws, was clothed with public official functions; and it can not be-even plausibly contended but that the board is vested with authority and power to act in matters relating to the public interest. In. so saying, it is simply announcing the definition of an office. Indeed, the selection and appointment of state officers, and the filling; of vacancies, are among the highest powers and most delicate public trusts that can be delegated, for upon their proper exercise depends the whole action of the government; and I am at a loss to-understand how it can be said, that a board of appointment,, created, by a statute of the state, to exercise these powers and trusts, deriving its sole authority to meet, select, and appoint state officers,, and remove them, from a law of the state, is, notwithstanding, a. private board, meeting on its own private business, and selecting- and appointing state officers, and removing them and filling vacancies-on its own individual authority.
That the term of office of the board of appointment, under these-laws, in the absence of any express limitation, might continue for-life, does not diminish, in any degree, the nature or importance-of their public functions; nor the less indicate that the incumbents of this board of appointment hold offices. The amount of ♦emoluments, or whether an officer receives any emoluments at all, has never been deemed a necessary element to constitute an office. Offices without powers or duties are sometimes created merely as sinecures; and the only evidence of the office may be the salary.
But where powers and duties of a public nature are required to-be performed, by a law of the state, they fix the character of the-individual authorized to perform them, and, whether paid or not,; *514 he holds an office. If a board had the power, for. life, of dispensing ■the official patronage of the government, and removing and filling vacancies, the members of it might be content with the power and the honor; and they would not be less officers, or less in the exercise of public functions, because they received no salary.
It seems to me, beyond doubt or question, that the power and discretion of selecting and appointing directors of the penitentiary and state-house commissioners, and removing and filling vacancies as provided in these laws, vested in the board of appointment public official functions, and, consequently, that the incumbents of such board, in the exercise of their official public duties, were constituted officers of the state.
It is said the board were not required, by the laws, to take an official oath. There is nothing in this position. If these laws had provided for an official oath, they would have simply enacted what the constitution itself required. It would have been mere supererogation.
II. If, then, these laws vested in this board of appointment public official powers, and thereby created offices, could the general assembly fill these offices by appointing the members of the board?
We have nothing to do in this case with the question, whether the general assembly could, by law, create such offices, or clothe a board with the powers given by these laws; nor with the question, whether the power of appointment should be, or could be, devolved ■upon the people at largo, through the ballot-box ; or should be, or •could be, annexed to existing offices; nor, indeed, with the manner in which this high and important public trust, of appointing and removing public officers, should be provided for by the general assembly. For the purposes of this case, it may *be conceded that the general assembly have authority, under the constitution, to clothe a board with all the powers of appointment and removal of directors of the penitentiary and state-house commissioners, as provided by the laws under consideration. For, conceding, in the broadest sense, that the general assembly may enact a law directing that a board shall appoint and remove officers and fill vacancies, the question still remains, whether'the board itself, thus created by the general assembly to exercise these public functions, and, being officers, can be appointed by the general assembly.
Upon this question, it seems to me only necessary to refer to the plain words of the constitution. It provides, in the first place, that *515 “ the election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this constitution or the constitution of the United States, shall be made in such manner as may be directed by law.” Now, providing .by law the manner in which an appointment shall be made, and making the appointment itself, are two different things : the first is pointing out the mode in which a thing shall be done, and the other is doing the thing itself; the one is legislative and directory, the other administrative. But the constitution does not leave the matter to this distinction. The same section further provides: “ But no appointing power shall be exercised by the general assembly, except as prescribed in this constitution, and in the election of United States senators ; and in these cases the vote shall be taken viva voce.” Appointing power by the general assembly is thus cut up by the roots, except only in the special eases in which it is expressly given by the constitution itself.
This section of the constitution, in first authorizing the general assembly to provide by law for the manner in which appointments shall be made, expressly limits that manner by unconditionally, and without reservation, taking from the general assembly appointing power, except in the election of United States senators, and in those cases which are prescribed in the constitution itself.
It is not pretended that the constitution has prescribed the appointment of this board. Where then, in the constitution, is the ^appointing power of the general assembly, which authorizes them to appoint the officers of this board ? Appointments “ shall be made in such manner as may be directed by law; but no appointing power shall be exercised by the general assembly.” Such is the language of the constitution, and it admits of no escape or evasion, by which the general assembly can create an office and fill it by their own appointment.
But it is said that, inasmuch as the general assembly have power to direct by law the manner in which elections and appointments to office shall be made, and may in the exercise of this power annex it by law to some existing office, such as the governor virtute officii, there is, practically, no difference between the general assembly vesting the power in individuals designated by name, as in the laws before us, or annexing the power to an existing office.
This line of argument will not, in this case, bear the slightest examination, for, if it were true, it would have no application to the *516 case before us. But it has not, perhaps, the usual merit of a false position — plausibility. Let us examine it.
If it be conceded that the general assembly could, or if it be conceded that it could not, annex to an existing office, such as the office of governor, with the consent of the senate, the power of appointing directors of the penitentiary and state-house commissioners, it would not in any manner touch the question before us; for the laws we are now considering, instead of annexing to any existing office the power of appointment, etc., have, in the first place, provided for a board of appointment, clothed with public functions, and without providing for the manner in which the offices of this board should be filled, have directly selected and appointed the members of the board, thereby exercising, in respect to the board, the appointing power.
Whether, therefore, there be any difference between the general assembly creating an office and appointing the incumbent thereof, or annexing the power of appointment to an office already existing and filled, has no application whatever to the case before us.
But it may be proper to inquire whether there is not a difference *in this respect; that is, whether the general assembly in fact exercise the appointing power, by annexing to an office already existing and filled, the power of making appointments and filling vacancies.
If the general assembly annex to an office already existing and filled additional powers and duties, upon what ground can it be claimed that this is the exercise by the general assembly of the appointing power? Certainly upon this only, that the general assembly has enlarged or added to the powers and duties of an existing office. But this is really absurd; for, if adding to the duties or powers of existing offices is an exercise of the appointing power, then every new duty required, or power conferred upon any state, county, or. township officer, must be deemed the exercise by the general assembly of the appointing power, and forbidden by the constitution.
But these fallacious positions arise out of a misapprehension of what is meant by the exercise of the appointing power. An office, until filled, is an impersonal thing — aD incorporeal hereditament. It is filled by the exercise of the appointing power, and when filled, the office and officer both exist. The office itself may by law be enlarged in its powers, or new duties enjoined, without touching *517 the appointment or tenure of office of the incumbent or his successor. It would therefore seem highly probable, although the question is not before us, that the general assembly could, without displacing or appointing a governor of Ohio, annex to the office of governor the power of appointing directors of the penitentiary, oi the duty of performing any other legitimate executive function.
If the general assembly conferred upon the incumbent of the gubernatorial chair official public powers as an individual, so that he would continue to exercise the powers thus conferred, whether he continued to hold the office of governor or not, it would seem quite manifest, to my mind, that the general assembly created an office in such case, and exercised the appointing power.. But these questions are not before us, except to comment upon with a view to aid those who seem to be unable to distinguish between an office and an officer — between official powers conferred by law *upon and annexed to an office, and the individual incumbent or officer.
The whole case is within a nutshell. The board was vested with official functions, and could not, therefore, be appointed by the general assembly.
Although it is clear, beyond any question or doubt, in our minds, that these laws are unconstitutional and void, it is proper to add, for the benefit of those who suppose that a board like this may be appointed by the general assembly, that the public functions of this board are not confined, simply, to the appointment of offices and filling vacancies; but they sit as a public tribunal, upon the official conduct of state officers, and, for causes stated in the law constituting the board, may remove the directors of the penitentiary. It is not a board created to fulfill only the requirements of the constitution in regard to appointments, but is vested with public functions which have no reference to appointments or the filling of vacancies; so that, if the general assembly had power to appoint officers to make appointments, we have heard no argument or view which would authorize the general assembly to appoint a board clothed with the power to supervise the official conduct and remove state officers.
It is proper to add further that the third section of article seven of the constitution gives the governor the power of filling vacancies in the office of directors of the penitentiary; but one of the laws under consideration, notwithstanding, confers this power upon the board of appointment
*518 The questions before us have been so far misapprehended, that it is necessary to say distinctly, that we do not decide whether a board of appointment, such as these laws create, may or may not be constitutionally created; for it is unnecessary to decide it. But we hold that the general assembly can not appoint the officers of such a board. Whether the general assembly can annex the power of appointment of the directors of the penitentiary and state-house commissioners to the office of governor, or to any other existing office or board, we do not decide, simply because the question i» not before us.
Bartley C. J., dissented. Scott and Sutliff, JJ., concurred.